IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JACINDA GLOVER                                                                   PLAINTIFF

v.                               Case No. 1:22-cv-1072

HUDSON MEMORIAL NURSING HOME                           DEFENDANT

**MEMORANDUM OPINION**

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 14. Plaintiff has responded to the motion. ECF No. 18. Defendant has filed a reply. ECF No. 19. The Court finds this matter ripe for consideration.

**I. BACKGROUND**

Plaintiff Jacinda Glover claims that Defendant Hudson Memorial Nursing Home ("Hudson Memorial") violated the Family and Medical Leave Act ("FMLA"), Title VII of the Civil Rights Act of 1964, and the Arkansas Civil Rights Act ("ACRA") when it decided to remove her from the Director of Nursing position.

Hudson Memorial is a short-term rehabilitation and long-term care facility. Hudson Memorial first hired Glover, who is Black, as a nurse in May 2012. In February 2016, Glover resigned to take another job. On December 3, 2019, Hudson Memorial rehired Glover as the Assistant Director of Nursing at a rate of $27.00 per hour. In 2020, Hudson received two pay raises approved by Hudson Memorial Administrator Carolyn Merritt. In December 2020, Glover was making $28.00 per hour.

In April 2021, Hudson Memorial received a written complaint from a resident's family member describing Glover as overbearing, condescending, and not an asset to the facility. Also

in April 2021, the Director of Nursing resigned. Glover expressed interest in the Director of Nursing position. Despite the recent complaint, Merritt decided to hire Glover as the Director of Nursing on a trial basis. Glover reported directly to Merritt.

As Director of Nursing, Glover's responsibilities included overseeing staffing and hiring, scheduling, and leave requests from staff. She was responsible for ensuring that staff-to-resident ratios were correct and that staff had the needed supplies. Glover was also responsible for the training and education of the nursing staff, including the planning of in-service training meetings for staff that were to be conducted at least monthly and as needed. Glover's role included talking with residents and their families daily and making sure that patients were cared for.

It was Glover's responsibility to ensure that all state-mandated paperwork was up to date. She was responsible for completing and submitting nursing department paperwork, such as Medicaid 703 forms, to the state for each resident.[1] Once the state accepted the Form 703, the state would send to Hudson Memorial a Form 704. Glover was responsible for providing the Form 704 to Hudson Memorial's bookkeeping department. Hudson Memorial could not bill Medicaid for a resident's care until the Form 704 was received.

According to Merritt, Hudson Memorial received several verbal complaints regarding Glover, and one employee quit because of how she was treated by Glover. Glover states that she was never informed of any complaints about her behavior. In August 2021, Merritt and the assistant administrator were concerned about the organizational state of Hudson's office, so they organized the office for her and filed paperwork found in the office. Merritt verbally counseled Glover regarding the state of her office.

---

[1] When Hudson Memorial admits a resident, it must submit a Form 703 to the Arkansas Department of Human Services. The form lists the medical conditions and care needs for the resident.

Glover was expected to conduct in-service training meetings for her nursing staff at least once a month. She only conducted one in-service training while she was Director of Nursing. Glover did not organize or schedule evaluations for her nursing staff.

Glover began receiving cortisone injections for her knee in early 2021. In September 2021, Glover and her doctor began to discuss the possibility of knee surgery. The knee surgery was then scheduled for October 4, 2021, and rescheduled for October 6, 2021. Glover notified Hudson Memorial of the knee surgery days before it was to take place. Glover did not turn in her FMLA paperwork until after her surgery; however, Hudson Memorial did grant her request for FMLA leave. While Glover was on FMLA leave, her duties were covered by the Assistant Director of Nursing and Merritt. While on FMLA leave, Merritt texted Glover several questions regarding work and kept Glover informed as to what was going on at work. On October 12, 2021, Glover informed Merritt via text message that she could return to work on November 8, 2021. Merritt responded by stating "[y]ou are kidding" and "[y]ou need to call me later." ECF No. 17-4.

While Glover was on FMLA leave, Hudson Memorial's bookkeeper discovered that Glover had either not properly submitted or had not completed required Medicaid paperwork for some Hudson Memorial residents. On October 13, 2021, Merritt gave the bookkeeper permission to enter Glover's office to look for information needed to complete the necessary paperwork. The bookkeeper found the needed information but described searching for it as a "chore." The bookkeeper also stated that Glover had no apparent filing system for her office.

On November 8, 2021, Glover returned to work at Hudson Memorial. The next day, Merritt met with Glover for a six-month evaluation to discuss her overall performance as Director of Nursing. Glover scored 48% on the evaluation form Merritt used, noting Glover's failure to complete required documentation, failure to train nursing staff, lack of organization, and

complaints from residents' families. In December 2019, when Glover was Assistant Director of Nursing, she scored a 95% on the evaluation form, which was scored by her supervisor, Kara Yutzy. After Glover received the poor evaluation, Merritt offered Glover an MDS[2] role in lieu of termination. Merritt stated that Glover was a good treatment nurse and Merritt wanted to keep her at Hudson Memorial. The MDS role paid a maximum rate of $28.00 per hour, which was less than Glover made as Director of Nursing. Ultimately, Glover decided not to take the MDS position because of the lower pay. Glover then turned in her keys and left Hudson Memorial.

After Glover refused the MDS position, Hudson Memorial promoted the Assistant Director of Nursing, Florence Henderson, who is Black, to the Director of Nursing position. Hudson Memorial's employee handbook provides a grievance and appeal procedure for employees that would have allowed Glover to appeal Merritt's decision to the Board of Governors. Glover did not pursue a grievance.

On December 22, 2022, Glover filed her complaint against Hudson Memorial, alleging claims related to the circumstances surrounding her departure from Hudson Memorial: (1) an FMLA interference claim; (2) an FMLA retaliation claim; and (3) a discriminatory disparate treatment claim pursuant to Title VII and ACRA. Hudson Memorial argues that it is entitled to summary judgment on all claims. Glover disagrees.

## II. LEGAL STANDARD

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031,

---

[2] It is unclear from the record the full title of the "MDS position." Both parties simply refer to the position as the "MDS position." It appears that the MDS position is an administrative staff position. ECF No. 16, ¶71. Merritt describes the position as one with less stress, responsibility, and communication with residents and family members.

4

1042 (8th Cir. 2011) (quotation omitted). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252. "There is no genuine issue of material fact when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Zimmerli v. City of Kansas City, Missouri*, 996 F.3d 857, 862-63 (8th Cir. 2021) (quotation omitted).

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). "The party moving for summary judgment generally has the burden of demonstrating the absence of any genuine issues of material fact." *Zimmerli*, 996 F.3d at 863. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

### III.  DISCUSSION

The Court will proceed by separately addressing each of Glover's claims and Hudson Memorial's corresponding arguments as to why it is entitled to summary judgment.

#### A.  FMLA Claims

Under the FMLA, which entitles an employee to twelve workweeks of leave during any twelve-month period if she has a serious health condition, 29 U.S.C. § 2612(a)(1)(D), an employee can bring two types of claims: "(1) 'interference' . . . claims in which the employee alleges that an employer denied or interfered with [her] substantive rights under the FMLA and (2) 'retaliation' . . . claims in which the employee alleges that the employer discriminated against [her] for exercising FMLA rights." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008). Glover asserts

5

both.

### 1. FMLA Interference Claim

To succeed on an FMLA claim of interference, Glover must show that: (1) she was eligible for FMLA leave; (2) Hudson Memorial knew Glover needed FMLA leave; and (3) Hudson Memorial denied Glover an FMLA benefit to which she was entitled. *Smith v. AS America, Inc.*, 829 F.3d 616, 621 (8th Cir. 2016). Glover's claim for interference will fail unless she "shows that [Hudson Memorial's] interference prejudiced [her] as the result of a real, remediable impairing of her rights under the FMLA." *Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1158 (8th Cir. 2016).

The parties agree that Glover was eligible for FMLA leave based on her knee surgery, and Hudson Memorial does not dispute that it knew Glover needed FMLA leave. There is no dispute that Glover received FMLA leave, even though she did not return her FMLA paperwork until after her surgery. Nevertheless, Glover argues that Hudson Memorial interfered with her FMLA leave because she was asked to complete work-related tasks while on leave, such as training an employee on how to fill out a Medicaid Form 703.

Here, Merritt communicated with Glover by phone and through text messages during her leave period. Merritt passed along information to Glover about employees' schedules, and Glover passed on similar information to Merritt. Merritt asked Glover for a couple of computer passwords and asked her to call an employee who was having trouble signing into a computer program. Glover testified that she also received at least one text message from the Assistant Director of Nursing asking Glover how to file or fill out a form. Glover was never asked to do anything more than pass on institutional knowledge and instructions, and Glover "never expressed reservations to [Merritt] about performing work." *Massey-Diez*, 826 F.3d at 1159. There is no evidence that

6

Merritt required Glover to work during her time off as a condition of continued employment. *See id.* Apart from answering texts, Glover testified that she did no other work from home while on FMLA leave. At most, it appears that Merritt and the Assistant Director of Nursing engaged in *de minimus* and non-disruptive communications with Glover while trying to perform Glover's role. *Id.* at 1158-59 ("For purposes of summary judgment, courts have drawn . . . a distinction between, on the one hand, receiving nondisruptive communications such as short phone calls requesting the employee to pass on institutional knowledge . . . as a professional courtesy, and, on the other, requiring the employee to complete work-related tasks or produce work product."). Glover cannot establish any prejudice from her limited communications with Merritt and the Assistant Director of Nursing while on FMLA leave.

Accordingly, the Court finds that the evidence does not permit a reasonable jury to find that Hudson Memorial interfered with Glover's right to FMLA leave. Therefore, Hudson Memorial is entitled to summary judgment on Glover's FMLA interference claim.

### 2. FMLA Retaliation Claim

Section 2615(a)(2) of the FMLA makes it unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). There are two ways to prove an FMLA retaliation claim: (1) through direct evidence of retaliation, or (2) under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *Phillips,* 547 F.3d at 912 (applying the *McDonnell Douglas* burden-shifting framework to an FMLA retaliation claim). Glover presents no direct evidence of FMLA retaliation and makes her arguments using the *McDonnell Douglas* framework.

Under the *McDonnell Douglas* burden-shifting framework for indirect discrimination, an

employee must first establish a prima facie case, which requires a showing that the employee: (1) engaged in protected activity under the FMLA, (2) suffered a materially adverse employment action, and (3) established a causal connection between the protected activity and the adverse employment action. *Thompson v. Kanabec Cnty*, 958 F.3d 689, 707 (8th Cir. 2020) (citation omitted). If Glover presents evidence to meet these three elements, the burden shifts to Hudson Memorial, who must come forward with evidence of a legitimate, nondiscriminatory reason for the adverse action. *Brown v. Diversified Distrib. Sys., LLC*, 801 F.3d 901, 909 (8th Cir. 2015). Finally, Glover bears "the ultimate burden of showing that the employer's proffered reason was a mere pretext for a retaliatory motive." *Id.*

There is no dispute that Glover engaged in protected activity under the FMLA. It also appears that one day after she returned from FMLA leave, she was demoted to a position with a lower rate of pay. Therefore, she has suffered an adverse employment action. As to the third element of her prima facie case, Glover argues that removal from the Director of Nursing role the day after she returned to work shows that there was a causal connection between her taking FMLA leave and her demotion. The Eighth Circuit has "discounted, albeit with qualification, the possibility that mere temporal proximity between the protected act and adverse employment action can establish the necessary causal connection." *Smith v. Allen Health Sys., Inc.* 302 F.3d 827, 832 (8th Cir. 2002) ("Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."). However, the Eighth Circuit has "sometimes held that the timing of one incident of adverse employment action following protected activity sufficed to establish causal connection." *Id.* (citation omitted). Thus, under Eighth Circuit precedent, it appears that Glover's return to work followed by her demotion one day later might be sufficient to establish causation, especially given

8

that the *McDonnell Douglas* framework requires only a minimal showing before requiring the employer to explain its actions. *Id.* at 833. However, the Court's analysis does not end here.

Hudson Memorial has come forward with evidence other than retaliation for Glover's removal from the Director of Nursing role—her failure to adequately perform her job duties. Hudson Memorial has presented evidence that Glover failed to properly submit and complete Medicaid-required paperwork, conducted only one of the required monthly in-service trainings for nursing staff while she was Director of Nursing, and failed to organize or schedule evaluations for her nursing staff. Hudson Memorial discovered the issue with the Medicaid-required paperwork while Glover was on FMLA leave. Failure to properly submit or fill out the required paperwork prevents Hudson Memorial from billing Medicaid until the proper paperwork is submitted.

Because Hudson Memorial has offered evidence of a legitimate, nondiscriminatory reason for removing Glover as Director of Nursing, she bears the ultimate burden of presenting evidence that: "(1) creates a question of fact as to whether [Hudson Memorial's] proffered reason was pretextual and (2) creates a reasonable inference that [Hudson Memorial] acted in retaliation." *Id.* To carry the burden of showing pretext, Glover must show that Hudson Memorial's justification for removing her as Director of Nursing was "unworthy of credence." *Id.* at 833-34. "An employee's attempt to prove pretext or actual discrimination requires more substantial evidence than it takes to make a prima facie case . . . because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in the light of the employer's justification." *Phillips v. Matthews*, 547 F.3d 905, 912-13 (8th Cir. 2008).

Here, Glover fails to put forth any evidence that would demonstrate pretext. Glover offers nothing more than disagreement with her most recent job evaluation. Glover notes that she had been promoted and had positive job evaluations in the past. However, these previous job

9

evaluations were not related to her current Director of Nursing role. Glover has not offered any evidence, other than her opinion, that the documented performance deficiencies were inaccurate. Thus, Glover has failed to meet her burden of demonstrating pretext.

Accordingly, the Court finds that the evidence does not permit a reasonable jury to find that Hudson Memorial discriminated against Glover for exercising her FMLA rights. Therefore, Hudson Memorial is entitled to summary judgment on Glover's FMLA retaliation claim.

### B. Title VII and ACRA Claims

Glover claims that the decisions to demote or terminate her were the result of race discrimination. She argues that she was treated differently than non-Black employees "who performed the same actions that led to [her] being demoted, specifically having messy offices or having patients complain that they were rude." ECF No. 3, ¶ 70. Glover claims that she was demoted or terminated while other non-Black employees were not.

When there is no direct evidence of discrimination, Title VII and ACRA race-based discrimination claims, as with FMLA retaliation claims, are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011) ("[C]laims of discrimination . . . are properly analyzed under the same legal framework whether brought under Title VII or ACRA."). Applying this framework to Glover's race discrimination claim, Glover is required to make a prima facie showing that she: "(1) is a member of a protected class; (2) was meeting her employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of her protected class." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citation omitted). If Glover is successful establishing a prima facie case of discrimination, a presumption of discrimination arises, and the

burden then shifts to Hudson Memorial to show a legitimate, nondiscriminatory reason for the adverse action of which Glover complains. *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1125 (8th Cir. 2017). If Hudson Memorial satisfies its burden, "the presumption disappears and [Glover] must provide evidence demonstrating [Hudson Memorial's] proffered nondiscriminatory reason is mere pretext for intentional discrimination." *Id.* (citation omitted).

Here, the Court need not consider Glover's ability to make a prima facie showing because, even assuming that she is able to clear this initial hurdle, Hudson Memorial offers a legitimate, non-discriminatory reason for demoting Glover—her failure to adequately perform her job duties. As discussed above, Hudson Memorial has presented evidence that Glover failed to properly submit and complete Medicaid-required paperwork, conducted only one of the required monthly in-service trainings for nursing staff while she was Director of Nursing, and failed to organize or schedule evaluations for her nursing staff. Glover offers no evidence demonstrating that Hudson Memorial's reason for demoting her is pretext for discrimination. Glover offers only speculation and her own opinions about the veracity of the most recent job evaluation, and past evaluations in other roles are not evidence of her job performance in the Director of Nursing role. Further, Glover cannot specifically point to any non-Black similarly situated senior manager who was treated differently than she was. In sum, Glover fails to present any probative evidence showing that Hudson Memorial's proffered reason for her demotion was pretextual.

Accordingly, the Court finds that the evidence does not permit a reasonable jury to find that Hudson Memorial discriminated against Glover based on her race. Therefore, Hudson Memorial is entitled to summary judgment on Glover's Title VII and ACRA race-based discrimination claims.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Hudson Memorial's Motion for Summary Judgment (ECF No. 14) should be and hereby is **GRANTED**.  Glover's claims are **DISMISSED WITH PREJUDICE**.  A judgment of even date shall issue.

**IT IS SO ORDERED**, this 23rd day of February, 2024.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge
